UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-61621-STRAUSS

JOHN DOE,

    Plaintiff,
v.

MARCO RUBIO et al.,

    Defendants.
_____/

## OMNIBUS ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Proceed Under Pseudonyms [DE 3] (the "Pseudonym Motion"), Plaintiff's Motion for Extension of Time and Order to Show Cause [DE 20] (the "Extension Motion"), and Plaintiff's Motion for Leave to File Amended Complaint [DE 21] (the "Leave Motion"). For the reasons described below, the Court will deny the Pseudonym Motion and grant in part and deny in part the Extension Motion and Leave Motion.

## BACKGROUND

On August 11, 2025, Plaintiff filed his Complaint on behalf of himself and numerous others. *See generally* [DE 1]. Plaintiff filed his Complaint under the pseudonym of "J. Doe," *id.* at 1, and separately moved for himself and all other anonymous Plaintiffs to proceed under pseudonyms "because the release of their names would expose them to a significant risk of harm, and because proceeding anonymously will not significantly burden the Defendants or other parties." [DE 3] at 2.

Since Plaintiff filed this action on August 11, 2025, the deadline to perfect service originally was November 10, 2025. Fed. R. Civ. P. 4(m) (requiring service of summons and

complaint to be perfected upon defendant within ninety days after filing of complaint). This Court later extended the deadline to perfect service to November 26, 2025, upon Plaintiff's prior motion for extension of time. *See generally* [DE 18]. After that extended deadline lapsed, the Court entered an order requiring Plaintiff to "show cause as to why this case should not be dismissed for failure to perfect service of process." [DE 19] at 1. Plaintiff responded by filing the Extension Motion, which asks for the Court to extend all deadlines by an additional sixty days and issue an order "requiring Defendant to show cause why it failed to respond." [DE 20] at 1. In the Extension Motion, Plaintiff states in a conclusory fashion that he "has acted diligently but needs additional time to complete service or file amended pleadings." *Id.* Plaintiff also states that "Defendant has failed to respond to service, including ignoring certified mail notices." *Id.* Notably, this Court has previously explained to Plaintiff—in detail—the steps that he must take to perfect service on Defendants. *See* [DE 15] at 2-3. To date, Plaintiff has not demonstrated that he has perfected service.

Plaintiff has also moved for leave to file an amended complaint, stating that an amendment is needed to clarify some of his claims and add or correct allegations to ensure compliance with federal pleading standards. [DE 21] at 1. According to Plaintiff, an amendment will not cause prejudice because the case is in an early procedural posture. *Id.*

## ANALYSIS

I. **PSEUDONYM MOTION [DE 3]**

"'Generally, parties to a lawsuit must identify themselves' in the pleadings." *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020) (quoting *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992)). "Federal Rule of Civil Procedure 10(a) requires that 'every pleading' in federal court 'must name all the parties.'" *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011)

(quoting Fed. R. Civ. P. 10(a)). "This rule serves more than administrative convenience. It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Id.* (quoting *Frank*, 951 F.2d at 322). "This creates a strong presumption in favor of parties proceeding in their own names. Defendants have the right to know who their accusers are, as they may be subject to embarrassment or fundamental unfairness if they do not." *Id.* (citation omitted).

"Yet the rule is not absolute. A party may proceed anonymously in federal court by establishing 'a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *In re Chiquita Brands*, 965 F.3d at 1247 (quoting *Plaintiff B*, 631 F.3d at 1315-16). But the foregoing exception is narrow; parties may only use fictitious names in exceptional cases. *Id.* "In evaluating whether a plaintiff has shown that he has such a right, the court 'should carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.'" *Plaintiff B*, 631 F.3d at 1316 (quoting *Frank*, 951 F.2d at 323).

The Eleventh Circuit has explained that the first step of the requisite inquiry is to consider three factors: (1) whether the party seeking anonymity "is challenging government activity"; (2) whether the party "would be compelled, absent anonymity, to disclose information of utmost intimacy"; and (3) whether the party "would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *In re Chiquita Brands*, 965 F.3d at 1247 (citing *Plaintiff B*, 631 F.3d at 1316). Ultimately, though, "whether a party's right to privacy overcomes the presumption of judicial openness is a totality-of-the-circumstances question." *Id.* at 1247 n.5. In addition to the above-mentioned factors, "[o]ther factors to consider

include whether the party seeking anonymity is a minor or faces a real threat of physical harm absent anonymity" and "whether the party's requested anonymity poses a unique threat of fundamental unfairness to the defendant." *Id.* at 1247 (citations omitted).

In *Chiquita*, the Eleventh Circuit addressed the type of evidence needed to support proceeding under pseudonyms. *See* 965 F.3d at 1248. The case arose from multidistrict litigation in which the plaintiffs alleged that a Colombian paramilitary group killed their family members, with Chiquita Brands International, Inc. (and other affiliated entities) giving the paramilitary group financial support that supposedly contributed to the deaths. *Id.* at 1242-43. The Eleventh Circuit first recognized that "different litigants may face different risks of harm." *Id.* at 1248. The parties seeking to proceed anonymously in the case "cite[d] general evidence showing that those who oppose paramilitary groups or paramilitary-affiliated entities face risks of paramilitary violence." However, the Eleventh Circuit affirmed the district court's denial of the pseudonym motions because "this evidence d[id] not compel the conclusion that the MDL plaintiffs face[d] those risks." *Id.*

Here, Plaintiff's Pseudonym Motion does not meet the high burden to overcome the strong presumption of openness in judicial proceedings because it states one conclusory line that "the release of their names would expose them to a significant risk of harm . . . ." [DE 3] at 2. Without more elaboration, the Court cannot find that Plaintiff has met his burden. Looking beyond the Pseudonym Motion, the 131-page, 335-plus-paragraph Complaint likewise does not establish that Plaintiff has met his burden. The Complaint asserts numerous causes of action against a whole host of different parties (some of which are not even actually named as Defendants) and makes very serious *but unsubstantiated* accusations of corruption, fraud, extrajudicial killings, and other misconduct in Bolivia and elsewhere. *See generally* [DE 1]. Although Plaintiff is challenging

government actions (not only those of the U.S. government but of foreign governments as well), Plaintiff fails to allege in any direct or specific way how he or the other anonymous parties on whose behalf the action is purportedly brought are at risk such that they overcome the strong presumption in favor of parties *not* using pseudonyms.

Indeed, the Complaint predominantly includes references to general instances of alleged misconduct rather than specific ones. It is true that beyond detailing the alleged corruption and human rights abuses in Bolivia, Plaintiff also alleges that "Plaintiff and Bolivian victims have suffered . . . [p]hysical and emotional harm caused by torture and extrajudicial killings . . . ." *Id.* ¶ 335, at 129; *see also id.* ¶ 43, at 23. ("Additional Interested Party: 1-1000 Victims of torture, extrajudicial killings, and other abuses in Bolivia who have suffered harm due to the Bolivian regime's actions allegedly funded by mismanaged Venezuelan assets."). Moreover, Plaintiff references some specific instances, such as the death of a protected witness in Miami. *See, e.g.*, [DE 1] at 129. Even so, a cursory review of the Complaint does not reveal specific harms that Plaintiff and the other anonymous parties are currently at risk of if they cannot proceed under pseudonyms in this action.

While the Court recognizes the seriousness of the allegations in the Complaint, the Court cannot accept the assertion that non-specific instances of alleged fraud, corruption, or extrajudicial killings will justify Plaintiff and every other supposed party proceeding anonymously without more corroboration. Again, "different litigants may face different risks of harm[.]" *In re Chiquita Brands*, 965 F.3d at 1248. And the overall lack of specificity as to the actual parties makes it nearly impossible for the Court to assess the relevant factors that it must, i.e., whether Plaintiff and the other anonymous parties, if named, will be required to reveal (1) information of the utmost intimacy, (2) illegal conduct that could subject themselves to the possibility of criminal

prosecution, (3) details of a person who is a minor, or (4) real threats of physical harm, beyond the highest level of generality.  *See id.* at 1247.

Therefore, the Pseudonym Motion is due to be denied.  Even though the Court will allow Plaintiff to file an amended Complaint, as described below, he must include his name.  When he files the amended complaint, he may renew the Pseudonym Motion—but only if Plaintiff clearly substantiates the risks that he specifically may face.

## II.     EXTENSION MOTION [DE 20]

Plaintiff asks for a sixty-day extension of all deadlines and for an order to show cause directed at "Defendant."[1]  [DE 20] at 1.  The Court must extend the time for service if a plaintiff shows good cause for the failure.  Fed. R. Civ. P. 4(m).  Yet the Court has already extended the service deadline once to accommodate Plaintiff.  *See* [DE 18].  On November 10, 2025, Plaintiff requested an extension of thirty days.  [DE 17] at 3.  Although the Court only granted that request in part, Plaintiff has now effectively received almost two weeks *more* than what his previous motion sought to complete service.  Even so, because Plaintiff has not been entirely idle when attempting to perfect service, the Court will extend the deadline *one last time*.  But the Court will not grant Plaintiff the additional sixty days that he requests.  Instead, Plaintiff will be given an additional two weeks to perfect service.  The Court also declines to issue an order to show cause to any Defendant.  Indeed, although Plaintiff seeks an order requiring Defendant to show cause why it has failed to respond, Plaintiff's own motion indicates that Plaintiff "needs additional time to complete service[,]" [DE 20] at 1, thus effectively conceding that service is incomplete and that a response from Defendant is not-yet required.  The Extension Motion will thus be granted in part and denied in part.

---

[1] Plaintiff sues more than one Defendant.

### III.     LEAVE MOTION [DE 21]

Plaintiff has not indicated that he has perfected service and, indeed, seeks additional time to complete service. Depending on the status of service, Plaintiff may not need leave of court to amend his Complaint. *See* Fed. R. Civ. P. 15(a)(1)(A) ("A party may amend its pleading once as a matter of course *no later than* . . . 21 days after serving it . . . ." (emphasis added)). Regardless, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Because the case is at the pleadings stage and Plaintiff has not previously amended his Complaint, the Court will grant Plaintiff leave to amend.

However, the Court will *not* deem the Proposed Amended Complaint [DE 21-1] the operative Complaint because it would create a "shotgun pleading." *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) ("Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A few types of shotgun pleadings exist, but "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. "The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. Another type of shotgun pleading occurs when the complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322.

For starters, the current Complaint already qualifies as a shotgun pleading because multiple counts contain the same allegation that "Plaintiff incorporates by reference all of the preceding paragraphs as if fully set forth herein." *E.g.*, [DE 1] ¶¶ 314, 318, 320, 327. The result is a Complaint where numerous counts adopt all the allegations of the preceding counts. *See Weiland*, 792 F.3d at 1321. Despite this deficiency, Plaintiff's proposed amendment seeks to "incorporate[] all facts from the original complaint . . . ." [DE 21-1] ¶ 9. This incorporation does not specify how the plethora of allegations in the original Complaint would interact with the sparse allegations in the proposed amendment and would further compound the already deficient aspects of the original Complaint.

Another problem is that the original Complaint does not contain Plaintiff's name. As stated above, Plaintiff has not met his heavy burden of showing that proceeding anonymously is justified and thus must file a pleading containing his real name (albeit with the ability to renew the Pseudonym Motion upon legitimate substantiation). So, because the original Complaint fails to include Plaintiff's name, it cannot be incorporated by reference. Therefore, even though the Court will allow an amendment, Plaintiff must file a new complaint that adheres to federal pleading rules, specifically those included in Rules 8 and 10 of the Federal Rules of Civil Procedure.[2]

Therefore, it is **ORDERED AND ADJUDGED** that:

---

[2] *Pro se* litigants are required to comply with procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("[A]lthough [courts] are to give liberal construction to the pleadings of pro se litigants, '[courts] nevertheless have required them to conform to procedural rules.'" (citing *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002))).

1. The Pseudonym Motion [DE 3] is **DENIED**. Plaintiff's filings must include his real name. However, Plaintiff may renew the motion if he provides more specific details regarding the specific risks he faces rather than just general risks of harm.

2. The Extension Motion [DE 20] is **GRANTED** in part and **DENIED** in part. Plaintiff must perfect service no later than **January 5, 2026**.

3. The Leave Motion [DE 21] is **GRANTED** in part and **DENIED** in part. Plaintiff must file an amended complaint that complies with this Court's procedural rules by **January 12, 2026**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of December 2025.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge